**TUNSTALL et ux. v. C. E. CARLTON & CO.**

No. 9825.

Court of Civil Appeals of Texas. Galveston.

Feb. 23, 1933.

Leroy L. Moore, of Crockett, for plaintiffs in error.

N. H. Phillips, of Crockett, for defendant in error.

**590**

GRAVES, Justice.

■ These findings of fact and law filed by the learned trial court sufficiently disclose not only the nature and result of the suit below but also the grounds upon which the judgment there was based; the record fails to show that any of the fact-findings were ever excepted to in such way as to permit the plaintiffs in error to question the sufficiency of the evidence to sustain any of them, as so stated; they are therefore binding as such upon this court, and, together with the appended conclusions of law, are in full as follows:

"Court's Findings of Fact.

"1. I find that the defendant J. F. Tunstall on June 4th, A. D. 1930, executed and delivered to W. E. Carlton one certain promissory note in the principal sum of $315.00 with interest from maturity at the rate of ten per cent payable in two equal installments, the first on or before October 1st, 1930, the second on or before January 1st, 1931, providing that if said note is placed in the hands of an attorney for collection or suit is brought on the same that ten per cent shall be added as attorney's fees.

"2. I find that W. E. Carlton endorsed said note without recourse and delivered the same to plaintiff C. E. Carlton & Company prior to the filing of this suit and that C. E. Carlton & Company, a corporation, was at the date of filing suit herein and at the date of judgment herein the legal owner and holder thereof, and that said note at date of filing and at date of judgment was principal, interest, and attorney's fees wholly unpaid and that defendant was on the 18th day of August, A. D. 1931, justly due plaintiff the sum of $373.80, liquidated and proved by an instrument of writing bearing interest at the rate of ten per cent.

"3. I find that even date with said note the defendant J. F. Tunstall, in order to secure the payment thereof, did execute and deliver to C. E. Carlton, trustee, for the benefit of W. E. Carlton or other legal owner or holder of said note, a certain deed of trust wherein and whereby he did grant, sell and convey the following described property, situated, lying and being in the county of Houston and state of Texas, viz.:

"63.7 acres of land, a part of the Henry Gardner survey which was conveyed to J. F. Tunstall by J. V. Marsh and wife by deed recorded in Book 83, page 545, of the Houston county, Texas, Deed Records, to which reference is made for further description, same being off the west end of said Gardner survey, said deed of trust being in usual form with covenants and warranties and rights of sale and containing the following recital and homestead designation:

"The said property constitutes no part of my homestead, my homestead consisting of 160 acres of the John McCarty survey, and 86 acres, a part of the Griffin survey and Joel Young survey bought from Blanchard where I now reside.

"4. I find that at the date of making said deed of trust that J. F. Tunstall and wife, Annie Tunstall, were lawfully married and were actually residing on the John McCarty 160 acres of land above referred to; that they had both therefore joined in a designation of said 160 acres along with 40 acres of the land conveyed as in said deed of trust described as their homestead which designation neither of them have repudiated or changed, in so far as 160 acres is concerned until the making of said deed of trust, or for that matter at any time thereafter.

"5. I find that the defendants herein J. F. Tunstall and wife, Annie Tunstall, on the date of execution of the deed of trust above referred to, that is, on the 14th day of June, A. D. 1930, owned in fee simple 32 acres of land out of the said John McCarty survey and that they owned such interest in the remainder of said 160 acres as to justify J. F. Tunstall in designating all the same as their homestead, the reasons for this finding to be more fully developed in the subsequent findings.

"6. I find that at the date of the deed of trust aforesaid the legal title to all of the John McCarty survey except the 32 acres above referred to stood in the name of the aged mother of defendant J. F. Tunstall but that J. F. Tunstall had lived with her all of his life, she supporting him in childhood and he supporting her in manhood and in aid of his undertaking to support her having the free use of her property as well as his.

"7. I find that the said J. F. Tunstall borrowed the sum of about $700.00 for improvements of his homestead property, designating particularly the land to be improved as the land covered by the deed of trust above referred to and giving the same as security for said loan to the Federal Land Bank of Houston and by the invitation of his mother aforesaid using said money instead for the improvement of her 128 acres of land on the McCarty survey.

"8. I find that for several years prior to the execution of the deed of trust above described that J. F. Tunstall had been rendering the whole of the John McCarty 160 acres of land in his name for taxes year by year and paying said taxes in his name as they accrued.

"9. I find that the mansion house and appurtenant improvements necessary for the enjoyment of the same were placed on the John McCarty 160 acres survey with full knowledge, consent and approval of J. F. Tunstall and wife, Annie Tunstall, and of the Mother of J. F. Tunstall, Mrs. ——— Tunstall, all a long time prior to the execution of

the deed of trust above described, and that said 160 acres of the McCarty survey has been actually a part of the rural homestead and place of actual residence of the said J. F. Tunstall and wife for more than ten years prior to the bringing of this suit and prior to the making of said deed of trust.

"10. I find that J. F. Tunstall on June 14th, 1930, acted in good faith and without intent to wrong or injure his wife in designating as his homestead 160 acres of the John McCarty survey and 86 acres, a part of the Griffin and Joel Young survey bought from Blanchard.

"11. I find that the 86 acres, part of the Griffin survey and Joel Young survey, was situated contiguous to and adjoining to the 160 acres of the McCarty upon which J. F. Tunstall and wife actually resided and that the same, that is the said 86 acres of land, were of similar value and adaptability for use as a part of the homestead as the land conveyed in the deed of trust in question.

"12. I find that on the 24th day of March, 1930, J. F. Tunstall and wife, Annie Tunstall, executed and acknowledged before W. J. Patton an option to W. E. Carlton and J. W. Howard at Crockett, Texas, to lease the 127 acres in the John McCarty survey legal title to which was then standing in the name of Mrs. ——— Tunstall and that this they did by express request verbally made but not otherwise of the said Mrs. ——— Tunstall to them.

"13. I find that J. F. Tunstall and wife have lived all or practically all of their married life, ——— years, upon the John McCarty 160 acre survey with their mother Mrs. ——— Tunstall; that said three persons expect, so far as they or any of them now know, to continue to make their home on said property during the remainder of the life of the said Mrs. ——— Tunstall, and that J. F. Tunstall and wife will continue to make their home thereon after her death.

"14. I find that the 63 acres of the Gardner survey has a first and superior lien against the same in favor of the Federal Land Bank of Houston for the sum of about $600.00, and that neither the plaintiff nor the defendant herein have at any time intended that their dealings in said property should be to the prejudice of whatever rights the Federal Land Bank of Houston might have in and to the same.

"15. I find that the defendants J. F. Tunstall and wife, Annie Tunstall, and Mrs. ——— Tunstall in all their dealings with each other have acted in good faith each toward the other and I find further that as far as the evidence in this case shows that none of the three believed that any one or more of the others have acted at any time or in any manner with intent to injure or defraud the other or others.

"16. I find that W. E. Carlton, C. E. Carlton & Company and J. F. Tunstall in their dealings with each other have acted throughout in good faith with each other and entirely without intent on the part of any to mislead, injure or defraud the other or others.

"17. I find that prior to the making of the home designation by J. F. Tunstall and wife, Annie Tunstall, referred to in the 4th finding of fact that J. F. Tunstall had consulted attorneys of his own choice, namely, Messrs. Aldrich & Crook, attorneys at law, Crockett, Texas, who advised him that he could lawfully make by himself alone a homestead designation exactly as he did later make in the deed of trust sued upon.

"18. I find that on the date of the making of the homestead designation by J. F. Tunstall and wife, Annie Tunstall, referred to in the 4th finding of fact that they both consulted attorneys of their own choice, that is, Messrs. Aldrich & Crook of Crockett, Texas, and that they, with full knowledge of the lands owned by the said J. F. Tunstall and wife and the character of title by which same was held, advised that such homestead designation would be lawful, valid and binding.

"Conclusions of Law.

"My conclusions of law based upon the facts above set forth are:

"1. That plaintiff should recover of defendants in all things as sued for.

"2. That defendant, Mrs. Annie Tunstall, should take nothing by virtue of her cross-action against the plaintiff herein.

"3. That plaintiff have judgment against defendant J. F. Tunstall alone for $373.80, with interest at the rate of 10% from the 18th day of August, 1931, until paid, and for his costs.

"4. That plaintiff C. E. Carlton & Company has a lien against the land in plaintiff's petition described superior to any right that Mrs. Annie Tunstall, his wife, can assert herein but subordinate to the rights of the Federal Land Bank of Houston, Texas, and that said lien should be and is by the decree herein foreclosed in behalf of plaintiff who shall have his order of sale and execution in terms of the law."

■ Such being the state of the record as presented here, the sole question for this court to determine is whether or not the facts as so found below on the law justified the legal conclusions there made and the consequent judgment rendered; we are constrained to hold that they did, and cite the following authorities as supporting that determination, especially as resting upon the finding that plaintiffs in error had such interest in the 128 acres in the McCarty as justified them in designating that—along with the 32 acres in the same survey—as part of their homestead. Pearson v. Felps (Tex. Civ. App.) 53 S.W.(2d) 495, 496; Vaden v. Collier (Tex.

Civ. App.) 253 S. W. 889; Crowder v. Union Nat'l Bank of Houston, 114 Tex. 34, 261 S. W. 375; Phillips v. Warner (Tex. App.) 16 S. W. 423; Wilkerson et al. v. McMurray (Tex. Civ. App.) 167 S. W. 275; Cullers v. James, 66 Texas 494, 1 S. W. 314; Temple v. Watkins Land Co. (Tex. Civ. App.) 81 S. W. 1188.

It follows that the judgment of the trial court should be affirmed, and it will be so ordered.

Affirmed.