### HAYNES et al. v. VERMILLION.
#### No. 15274.

Court of Civil Appeals of Texas.
Fort Worth.

Sept. 14, 1951.

Rehearing Denied Oct. 12, 1951.

Geo. K. Holland, Dallas, for appellants.

Spafford & Spafford, Franklin E. Spafford and Cedric G. Hamlin, Dallas, for appellee.

RENFRO, Justice.

This is a suit for partition and accounting.

In 1920, H. M. Vermillion and wife, Hattie Haynes Vermillion, purchased a lot in Dallas, Texas; they paid $1,500 cash and executed a vendor's lien note for $3,000. In December, 1924, they executed a renewal note for a balance of $2,000 due on the purchase money. On February 6, 1929, H. M. Vermillion executed a general warranty deed conveying the land in question to his wife, Hattie Haynes Vermillion, as her separate estate, reciting a consideration of $10 and love and affection. The deed was silent concerning the outstanding indebtedness against the property. Later in the same year, and again in 1935, Hattie Vermillion and H. M. Vermillion renewed the outstanding $2,000 note.

In January, 1937, Hattie Haynes Vermillion died. Since she died intestate and without issue, one-half interest in the property in question passed to H. M. Vermillion and the other one-half to the appellants.

In June, 1939, H. M. Vermillion married Hester A. Vermillion. In December, 1940, H. M. Vermillion and Hester A. Vermillion renewed the $2,000 note for five years. In December, 1943, H. M. Vermillion paid $1,000 on the note.

On May 7, 1944, H. M. Vermillion died and under his will left all of his estate to Hester A. Vermillion. In December, 1944, Hester A. Vermillion paid the remaining $1,000 balance due on the vendor's lien note heretofore referred to and $60 accrued interest.

On February 9, 1945, plaintiffs, being the brothers and sisters and the children of deceased brothers and sisters of Hattie Haynes Vermillion, brought this suit for a half interest in the lot as collateral kin and heirs of Hattie Haynes Vermillion and

for reasonable rental value from the date of the death of Hattie Haynes Vermillion.

The case was tried in a district court of Dallas County, Texas. Based upon jury findings and additional findings by the court, judgment was entered decreeing that a one-half interest in the lot belonged to appellee (defendant below) and one-half to appellants (plaintiffs below), and ordered same to be sold. Neither side has appealed from that part of the trial court's judgment.

The court allowed Hester A. Vermillion, appellee, a charge against the appellants' interest in the sum of $700.56, being one-half of the following sums: $2,000 enhanced value by reason of the erection of a brick building on the lot; $1,431.27 expended by appellee for taxes, insurance and reasonable and necessary repairs; and $1,060 expended by appellee in discharging the vendor's lien note heretofore referred to, less $3,090 agreed rental value.

By appropriate points appellants attack the allowance of $2,000 for enhanced value, certain items included in the $1,431.27 allowed for insurance and reasonable and necessary repairs and maintenance, and $1,060 allowed for discharging the vendor's lien note, and assign as error the refusal of the court to allow the appellants' claim for rent for the full period of time from the date of the death of Hattie Vermillion to the date of trial.

■ The trial court was correct in denying appellants' claim for rental from the date of the death of Hattie Haynes Vermillion to the date of the death of H. M. Vermillion. In an opinion written in a prior appeal of this case, Vermillion v. Haynes, 147 Tex. 359, 215 S.W.2d 605, 608, the Supreme Court held: "If petitioner can properly establish upon another trial that the property was being used by H. M. Vermillion as a business homestead *when Hattie Haynes Vermillion died* respondents (appellants in this appeal) are not entitled to recover rents for the period that *he continued thereafter so to use it.*" (Emphasis ours.) The jury found that H. M. Vermillion was using the property as a business homestead at the date of the death of Hattie Haynes Vermillion. Appellants assail the finding of the jury to that effect and the finding of the court that the property continued to be the business homestead of H. M. Vermillion to the date of his death.

■■ To preserve a place of business which is separate and distinct from the home as a part of the homestead, the head of a family must have a calling or business to which the property is adapted and reasonably necessary and such property must be used as a place to exercise the calling or business of the head of a family. Shryock and Rowland v. Latimer, 57 Tex. 674; Mays v. Mays, Tex.Civ.App., 43 S.W.2d 148. The title to the lot composing a homestead may be the separate property of either the husband or wife. Crowder v. Union National Bank of Houston, 114 Tex. 34, 261 S.W. 375.

■ The pleadings and proof amply support the jury finding that the property was the business homestead of H. M. Vermillion at the time of the death of Hattie Haynes Vermillion and the evidence is undisputed, uncontradicted and in fact largely supported by the testimony of one of the appellants that after the death of Hattie Haynes Vermillion and until the date of the death of H. M. Vermillion, he continued to use the property just as he had before Hattie Haynes Vermillion's death. He operated a small sandwich stand or cafe business on the premises, that was the only place of business he had, that was where he earned his livelihood for himself and Hattie Haynes Vermillion before her death and the only business he had to support himself from her death until his death, and his sole income was from the business on the premises.

We accordingly hold that appellants were not entitled to an accounting for rent prior to H. M. Vermillion's death in May, 1944.

The court found that Hester A. Vermillion claimed adversely to the appellants from May 22, 1947, when she filed an amended answer attacking the warranty deed from H. M. Vermillion to Hattie Haynes Vermillion to the date of the trial,

and the court accordingly allowed the appellants one-half of the rental value of the property from that date to the date of trial.

However, based upon a jury finding that Hester A. Vermillion "has not claimed adversely to appellants," the court refused to allow appellants an accounting for a reasonable rental value from the date of H. M. Vermillion's death until May, 1947.

■ In this the court was in error. The court should have sustained appellants' motion to disregard the jury findings. The appellee, Hester A. Vermillion, testified on the trial of this case that she did not talk to appellants about the property concerning the management or anything else, that she just went and did it herself, that it was her position at *all* times that the property belonged to her, that she never recognized the plaintiffs' having any interest in the property and that she still denied any interest in appellants until it was proven. She admitted receiving letters from appellants' attorney, dated January 12, 1945 and February 1, 1945, respectively, demanding a division of the property. In answer to the question of whether or not she had contended all along that plaintiffs had no interest in the property, she answered, "I did, yes." One of the plaintiffs testified that two years after Hattie Haynes Vermillion's death she warned appellee not to spend any more money on the place since Hattie's estate had not been settled and any heir could claim a division at any time. Appellee did not deny this conversation but testified she did not remember it and if she did have such conversation she did not pay any attention to it.

■ The appellee's own testimony conclusively shows that she was claiming adversely to appellants. "Where such tenancy in common is not acknowledged but denied, and the tenant in exclusive possession asserts an adverse claim to the entire property and holds possession thereof under such claim, the excluded tenants in common may, without demand for joint possession, recover for the use and occupation of their part of the land." Buchanan

v. Davis, Tex.Civ.App., 43 S.W.2d 279, 283, Id., Tex.Com.App., 60 S.W.2d 192; Skinner v. Vaughan, Tex.Civ.App., 150 S.W.2d 260; Vermillion v. Haynes, supra.

■ Moreover, it is admitted that appellee rented the property out during the entire time from the death of H. M. Vermillion to date of trial and that she kept all rental money and had never made any accounting whatever to appellants for any of said rent so received. Rentals received from others to whom the property has been let are in the nature of profits received beyond the permitted personal occupancy and use, for which the tenant so receiving must account proportionately to the other cotenants. 11 Tex.Jur., p. 462.

■ We sustain appellants' points of error attacking the credit of $1,060 paid by Hester A. Vermillion on the vendor's lien note heretofore set out. The Supreme Court definitely disposed of this claim in the prior appeal of the case, wherein the Court stated: "we hold that when H. M. Vermillion, grantor in the deed to Hattie Haynes Vermillion, paid the $1,000 and interest and when petitioner, as executrix and *devisee* under his will, later paid the remaining $1,000 and interest due on the vendor's lien note outstanding when the deed was executed, they were only doing what they were obligated by Vermillion's warranty to do. And petitioner is not entitled to reimbursement therefor in an accounting with respondents as heirs of Hattie Haynes Vermillion", [147 Tex. 359, 215 S.W.2d 609] citing Johnson v. Sherrill, Tex.Civ.App., 271 S.W. 276; W. D. Cleveland & Sons v. Smith, Tex.Civ.App., 156 S.W. 247.

In accordance with the Supreme Court's opinion, we hold that the $1,060 credit allowed Hester A. Vermillion in the trial court's judgment should be disallowed.

The parties stipulated $75 per month as reasonable rental value for the entire period in controversy.

The appellants are entitled to judgment for $2,913.75, being one-half the agreed rental value of the property from the date of the death of H. M. Vermillion to the

date of trial. The appellee is entitled to reimbursement for one-half of the $2,000 enhanced value of the property and for one-half of the $1,431.27 expended for taxes, insurance, maintenance and repairs to the property involved.

The judgment of the trial court is modified to the extent that appellants receive from appellee's share of the proceeds of the property the sum of $1,198.12, being the difference between the amounts due appellee as reimbursement as above set out and the amount of the rent due appellants.

This appeal is presented on forty points of error. We have sustained appellants' points attacking the $1,060 allowed appellee for reimbursement and the points complaining of the trial court's refusal to allow appellants rent from May 7, 1944, to May 22, 1947.

Finding no material errors in the remaining points, they are, for the sake of brevity, overruled without discussion.

The costs of this appeal are taxed one-half against appellants and one-half against appellee.

Judgment of the trial court is affirmed as modified.