**In re Jerry Bob CUMPTON, d/b/a the Casual Image, Inc., d/b/a Cumpton's Exxon Service Center, Inc.**

No. CA 3–82–1747–G.
Bankruptcy No. 382–00180–G–7.

United States District Court,
N.D. Texas,
Dallas Division.

June 2, 1983.

G. Scott Damuth, Dallas, Tex., for plaintiff.

Allan Brent Diamond, Dallas, Tex., for defendant.

---

MEMORANDUM OPINION

FISH, District Judge.

This appeal from Bankruptcy Court turns on a single legal issue: whether the bankrupt (Cumpton), a divorced man currently living in the home of his second wife, can claim a homestead exemption under Texas law for a residence previously occupied by him, even though his divorce decree provided that Cumpton had no further right to occupy that residence. Dempsey, a judgment creditor, opposed Cumpton's application to amend his schedules under 11 U.S.C.A. Rule 110 (1977) to reflect the claimed exemption. The bankruptcy judge held that Cumpton could not amend his schedules to list an exemption for his former residence (the Limetree property). The judgment of the Bankruptcy Court is affirmed.

Before Cumpton separated from his former wife in November 1979, the couple and their child occupied the Limetree property as their residential homestead. The couple later executed a contractual agreement incident to divorce which the judge incorporated into the divorce decree dated November 25, 1980. That decree provided that the parties had no intention of living together again; that Cumpton's ex-wife and child had the exclusive right to occupy the property; and that the property would be sold upon the child's eighteenth birthday or graduation from high school, unless the ex-wife elected an earlier sale or unless she ceased to occupy the premises. The Cumpton child will graduate this summer. Under the agreement, Cumpton and his ex-wife each own a one-half interest in the Limetree residence.[1]

On January 31, 1981, Cumpton remarried and moved to Palmer, Texas. Since that time he has resided with his second wife, Janet, and her two daughters in a house (the Palmer property) which all parties agree belongs to Janet as her separate property.

The bankruptcy judge's findings of fact cannot be disturbed unless clearly erroneous, but the district court must independently determine the correctness of his legal conclusions. 11 U.S.C.A. Rule 810 (1977); *In re Visiting Home Services, Inc.,* 643 F.2d 1356, 1359 (9th Cir.1979). Since the facts in this case are undisputed, this Court need review only the conclusions of law and their application to the facts.

The bankruptcy judge concluded that the terms of the divorce agreement prevented Cumpton from establishing a homestead in the Limetree property. In the opinion of this Court, the bankruptcy judge reached the correct result because, under Texas law, Cumpton could acquire no homestead rights apart from his new family, and there was no evidence that the Limetree property was the homestead of Cumpton's new family. His claim of exemption must therefore fail. *Burk Royalty Co. v. Riley,* 475 S.W.2d 566, 567 (Tex.1972). Cumpton's homestead rights in the Palmer property owned by his second wife reinforce the conclusion that only Cumpton's first wife, as a constituent member of the family, retained homestead rights in the Limetree property.

Cumpton's former wife and child have occupied the Limetree property since the divorce in 1980. The homestead exemption protects a constituent member of the family who remains in the home after divorce. *Woods v. Alvarado State Bank,* 118 Tex. 586, 19 S.W.2d 35 (1929).

Cumpton's interest in the property, however, stands on a different footing. The Texas Supreme Court in *Riley, supra,* recognized a distinction between the homestead rights of a surviving spouse and those of a divorced person. A widow who still uses land on which she formerly resided is entitled to a presumption that her homestead rights in it continue,[2] but a divorced wife is required to prove that the property

---

1. Upon sale, however, the wife is to receive 60% of the net proceeds from the sale and Cumpton 40%, distribution to occur after repayment of an outstanding debt.

2. See *Rancho Oil Co. v. Powell,* 142 Tex. 63, 175 S.W.2d 960 (1943).

for which she claims exemption is the homestead of her current family. *Riley,* 475 S.W.2d at 568. Although the Court's rationale in that case rested in part on the right of the husband to designate the family homestead, this Court finds it equally applicable to a situation in which the husband has tacitly designated the property belonging to his second wife as homestead by use and occupancy of it. Like the divorced wife in *Riley,* Cumpton did not allege, nor has he established, use and occupancy of his former family's homestead by his present family and an intent to make it their home.

■ Furthermore, Cumpton's newly acquired homestead rights in the Palmer property are incompatible with his assertion of homestead in the Limetree property. That the Palmer property belongs to Janet Cumpton as her separate estate has no bearing on Cumpton's homestead rights in that property. It is well established that the homestead may be the separate property of either the husband or the wife, or community property. *Crowder v. Union National Bank,* 114 Tex. 34, 261 S.W. 375, 377 (Tex.Comm.App.1924); *Haynes v. Vermillion,* 242 S.W.2d 444, 446 (Tex.Civ.App.— Fort Worth 1951, ref'd n.r.e.). The wife cannot have one homestead and the husband another. *Crowder* at 377.[3]

Cumpton asserts that a husband's homestead rights do not necessarily terminate when the marriage relationship is dissolved, relying on *Speer and Goodnight v. Sykes,* 102 Tex. 451, 119 S.W. 86 (Tex.1909). This case, however, is clearly distinguishable from the cited case in that the husband there had not remarried and had acquired no homestead rights in the property of a second wife.[4]

Cumpton cites the case of *Posey v. Commercial National Bank,* 55 S.W.2d 515 (Tex. Comm.App.1932, judgment adopted) for the proposition that a husband retains a homestead interest in the former family home even where he has deeded a life estate in his half-interest to his wife, retaining only a remainder. In contrast to the case before this Court, Posey had not remarried, and he testified that he had acquired no new homestead rights elsewhere.[5]

In summary, because there is no evidence to establish that the Limetree property is the homestead of Cumpton's current family, the judgment of the bankruptcy court is affirmed. Cumpton may not amend his schedules to reflect a homestead exemption in the Limetree property.

**3.** Although abandonment need not determine of the outcome of this case under *Riley, supra,* abandonment of the old homestead may be established as a matter of law by proof that a new homestead has been acquired. See *Norman v. First Bank & Trust,* 557 S.W.2d 797, 801 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.) and cases cited therein.

**4.** Furthermore, a court order had ejected Sykes from the homestead where he had lived with his family, whereas Cumpton left the Limetree property voluntarily. Also, Sykes had not prevented his own re-entry by an agreement in writing. Cumpton's acts amount to abandonment. Discontinuing use of property and expressing an intent to do so permanently constitutes abandonment. See *Gill v. Quinn,* 613 S.W.2d 324, 327 (Tex.Civ.App.—Eastland 1981, no writ); *Franklin v. Woods,* 598 S.W.2d 946, 949 (Tex.Civ.App.—Corpus Christi 1980, no writ).

*Riley, supra,* establishes that a creditor need not prove that a debtor who remarries has abandoned the homestead he occupied with his former family. Instead, the remarried debtor has the burden of establishing that the property for which the homestead exemption is claimed constitutes the homestead of his or her current family.

**5.** Furthermore, the Commission of Appeals found that the agreement in *Posey* was not voluntary, as here, but had been coerced. No provision in the *Posey* deed of the property to the wife would have prevented Posey from re-occupying the family residence had his wife passed away, while the Cumpton agreement prohibits reoccupancy by the divorced husband, providing that the property should be sold if the wife should cease to live there, and that Cumpton could not purchase it.